UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Number 2:03-cr-00046-JAW |
| | ) | |
| JEFFREY SHIELDS | ) | |

## <u>UNITED STATES' MEMORANDUM OF LAW</u>

Jeffrey Shields ("Shields") is an individual who is subject to both: (1) a term of

supervised release imposed by this Court;[1] and (2) a prescribed regimen of care imposed by the

United States District Court for the District of Massachusetts arising from Shields' civil

commitment as a "sexual dangerous person" pursuant to the civil commitment provisions of the

Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, Title 111, § 302(4),

120 Stat. 620 (July 27, 2006), codified at 18 U.S.C. §§ 4147-4248 (the "Adam Walsh Act").

Currently before this Court is a request by Shields to grant a transfer of his supervision

from this Court to the District of Massachusetts.

---

[1] Notwithstanding the completion of the incarcerated portion of Shields criminal sentence in November 2006, both Shields and the United States argued (and agreed) before the District Court for the District of Massachusetts that the commencement of Shields' term of supervised release was stayed by 18 U.S.C. § 4248(a) pending a decision on whether Shields would, or would not, be civilly committed.  <u>See</u> <u>United States v. Shields</u>, 07-12056-PBS (D. Ma.) [D. 238], p. 5-7; [D. 242].  <u>See generally</u>, <u>United States v. Johnson</u>, 529 U.S. 53, 58 (2000) (concluding that a term of supervised release cannot commence without a release from BOP custody).  Thus, Shields' three-year term of supervised release commenced upon the day that he was ordered civilly committed, February 12, 2009, and would terminate on February 12, 2012. <u>Accord</u> <u>Tobey v. United States</u>, --- F.Supp.2d ----, 2011 WL 2623495 (D.Md. Jun. 29, 2011); <u>United States v. Combe</u>, 2011 WL 976892 (D.Utah Mar. 18, 2011); and <u>United States v. Bolander</u>, 2010 WL 5342202 (S.D. Ca. Dec. 21, 2010).  <u>But</u> <u>see</u> <u>contra</u> <u>United States v. Brown</u>, 2011 WL 1831627 (D. Alaska May 12, 2011); <u>United States v. Wade</u>, Case No. 06-cr-00103 (D. Nev.) [D. 24]; <u>United States v. Wright</u>, 95-cr-08105 (S.D. Fla) [D. 58]; and <u>United States v. Mays</u>, Case No. 03-cr-00016 (D. Mont.) [D. 30].  The parties' view is shared by the United States Probation Office.

After a brief telephone status conference, this Court requested briefing concerning the standard to be applied in assessing whether to transfer Shields' supervision.

As detailed more fully below, whether to transfer supervision of a term of supervised release, and, whether to transfer the supervision of a prescribed regimen of care imposed upon a "sexually dangerous person," is committed to this Court's sound discretion.

## FACTS

### A. Procedural History

On September 30, 2003, Shields was convicted in this Court of the crime of possession of child pornography in violation of 18 U.S.C. § 2252A. United States v. Shields, Case No. 03-cr-046 (D. Me.) (Woodcock, J.). After guilty plea, Shields was sentenced to fifty-seven months of incarceration followed by three years of supervised release. Id.

On November 8, 2006, one day prior to the scheduled expiration of his incarcerated sentence, Shields was certified to be sexually dangerous pursuant to 18 U.S.C. § 4248(a). Thereafter, Shields' "release" was "stay[ed] ... pending completion of" the civil commitment hearing provided in 18 U.S.C. § 4248. Id. On February 12, 2009, Shields was found to be a "sexually dangerous person" and was civilly committed by the United States District Court for the District of Massachusetts (Saris, J). United States v. Shields, 597 F.Supp.2d 224 (D. Mass. 2009). That commitment was recently upheld. United States v. Shields, 649 F.3d 78 (1st Cir. 2011).

On June 10, 2010, pursuant to 18 U.S.C. § 4247(h), Shields moved for a hearing on whether he could be safely released to the community under a prescribed regimen of care. [D. 219]. After an evidentiary hearing, Shields was ordered released from civil commitment on June

9, 2011, subject to a prescribed regimen of care which included extensive conditions of supervision.  See United States v. Shields, 07-12056-PBS (D. Ma.) [D. 260].

On June 23, 2011, this Court granted a request by probation to modify the terms of Shields' supervised release to mirror the conditions imposed by the United States District Court for the District of Massachusetts.  United States v. Shields, Case No. 03-cr-046 (D. Me.), Electronic Order dated June 23, 2011.

**B.  Shields' Supervision Upon His Conditional Release**

While Shields had initially requested that he be released to the District of Maine, it was impossible to timely secure a placement for Shields in an appropriate structured living environment in Maine (Pharos House).  See United States v. Shields, 07-12056-PBS (D. Ma.), Transcript of the Discharge Hearing of Jeffrey Shields, dated June 9, 2011, [D. 264] p. 4-12. Rather than detain Shields for three months until a placement became available, the Probation Office of the District of Massachusetts arranged for Shields' immediate placement in the Coolidge House, a Residential Re-entry Center in Boston, Massachusetts.  Id., p. 8-9.  In that situation, however, Shields' treating psychologists from the Bureau of Prisons were concerned that a placement in Boston, followed by a transfer to Maine, might not serve Shields' interests. Id., 15-17.  Instead, they believed that Shields would benefit from a more lengthy placement in Boston.  Id.  In light of those opinions, Shields was Ordered released to the Coolidge House, and it was expected that he could remain in Boston for up to a year.  Id. 17-19.  Nevertheless, the Court also left open that Shields could be transferred to Maine when a spot became available at Pharos House.  Id., p. 19.[2]

---

[2] The District Court of Massachusetts recognized that Shields was under a criminal term of supervised release of this Court.  Massachusetts probation represented that this was not problematic as they had been contact with the Probation Office in Maine and could supervise

In July of 2011, Shields was assaulted by a roommate at Coolidge House.  Thereafter, Shields was relocated to the Pharos House on August 1, 2011.  See United States v. Shields, 07-12056-PBS (D. Ma.), Memorandum of Jeffrey Smith, Senior U.S. Probation Officer, [D. 273].

### C.  Shields' Request to Return to Massachusetts

On September 14, 2011, Shields sent a letter to the United States Probation Office for the District of Maine seeking to be transferred back to Boston, Massachusetts.  A copy was filed with the Court in Massachusetts.  United States v. Shields, 07-12056-PBS (D. Ma.) [D. 270].  By way of that letter Shields complained that: (1) the treatment he was provided in Maine was "far less extensive and effective" because his treatment in Maine was run by a social worker, not a psychologist, and Shields was not receiving one on one counseling; (2) Shields lacked health insurance in Maine; and (3) Shields lacked an adequate support system in Maine because probation restricted his access to Alcoholics Anonymous meetings and refused to allow him to attend Gay, Bisexual, Lesbian and Transgendered meetings more than once per week.  Id.

On October 3, 2011, the United States District Court for the District of Massachusetts referred Shields' request for a transfer of supervision to this Court "to see if the Court can Order better services, and if necessary, concurs to a transfer of jurisdiction."  United States v. Shields, 07-12056-PBS (D. Ma.) [D. 272].

Having conferred with the Probation Office for this District, the Massachusetts Probation Office responded to Shields' claims by Memorandum to the Court.  See United States v. Shields, 07-12056-PBS (D. Ma.), Memorandum of Jeffrey Smith, Senior U.S. Probation Officer, [D. 273].[3]  In response to claims concerning the adequacy of treatment, Massachusetts probation

---

Shields for Maine.  Id., p. 17-18.

[3] As the proponent of this Motion, the United States expects that the burden of production and

4

observed that, according to Maine Probation, Shields was referred for both group and individual counseling, that Shields' individual counseling had been delayed due to his request for a male therapist, and that Shields had since begun individual therapy. Id., p. 2. Further, Shields had an adequate opportunity to develop community support because Maine Probation permitted him to attend two Alcoholics Anonymous meetings per day. Finally, Shields had medical coverage in Maine and was receiving his prescriptions there. In addition, Massachusetts Probation observed that Shields has virtually no ties to Massachusetts and had developed no significant community ties of which Massachusetts Probation was aware while Shields was in Boston. Id.

Ultimately, Massachusetts probation stated that the transfer request should be denied. Id.

## ARGUMENT

### I.      Applicable Statutes and Standard of Review

Transfer of a term of supervised release is governed by 18 U.S.C. § 3605, which provides:

> A court, after imposing a sentence, may transfer jurisdiction over a probationer or person on supervised release to the district court for any other district to which the person is required to proceed as a condition of his probation or release, or is permitted to proceed, with the concurrence of such court.

18 U.S.C. § 3605. In short, this Court has the discretion to transfer Shields to any district willing to accept him.[4] See United States v. Fernandez, 379 F.3d 270, 272 (5th Cir. 2004)("Section 3605

---

persuasion is upon Mr. Shields. If necessary, the United States is certainly prepared to call Lincoln Hathaway, Shields' probation officer in Maine concerning his supervision.

[4] Applying those criteria, it is certainly arguable that the Memorandum filed by Massachusetts probation forecloses transfer. See United States v. Votta, 2007 WL 57136, *1 (3rd Cir. Jan. 09, 2007) ("Attached to Votta's brief is a letter from [a], Senior U.S. Probation Officer ... which gives the reasons for denying the relocation request. It is clear that the Probation Officer's response was as an agent of the court... Because the statute requires the concurrence of the transferee court ... and because the transferee court here indicated that it did not concur, the District Court lacked the authority to grant Votta's motion.")(unpublished).

'gives a court discretion to order a transfer, but conditions transfer upon the acceptance of jurisdiction by the court to which the transfer is made…'") (quoting United States v. Ohler, 22 F.3d 857, 858 (9th Cir. 1994).

The United States sees no reason why transfer of the oversight of the prescribed regimen of care imposed by the District of Massachusetts would operate under any different standard. While the Adam Walsh civil commitment provisions provide no specific guidance on transfer, this Court may look to caselaw addressing the transfer of the supervision of other civilly committed individuals.  In this regard,  the transfer of supervision for individuals civilly committed based upon mental illness and generalized (as opposed to sexual) dangerousness under 18 U.S.C. § 4246 are reviewed for abuse of discretion.  Ecker v. United States, 575 F.3d 70, 76-77 (1st Cir. 2009).  As the civil commitment provisions of the Adam Walsh Act draw extensively upon the language of 18 U.S.C. § 4246, and do not set forth separate standards for review of transfer decisions, it is reasonable to conclude that a similar standard should apply.

**II.      Shields' Request For Transfer Should Be Denied**

The government will not belabor the justifications for denying transfer that are advanced by the Probation Offices of this Court and the District of Massachusetts.  Tasked with Shields' day to day supervision, Probation is in the best position to explain to this Court the reasons why Shields' supervision should not be transferred back to Massachusetts.  But it remains worthy of note that it is the government's view that as between United States Probation Officers, and convicted sex offenders, the scale weighs heavily in favor of adopting the views of Probation concerning the implementation of the conditions imposed by the Court.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Shields' request that his supervision be transferred to Massachusetts.

CARMEN M. ORTIZ
United States Attorney

By:    <u>/s/Mark J. Grady by JC</u>
Mark J. Grady
Assistant U.S. Attorney
United States Attorney's Office
One Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3136
Mark.grady@usdoj.gov

THOMAS E. DELAHANTY II
United States Attorney

By:    <u>/s/ Jonathan R. Chapman</u>
Jonathan R. Chapman
Assistant U.S. Attorney
United States Attorney's Office
100 Middle Street Plaza
East Tower Sixth Floor
Portland, ME 04101-4100
(207) 780-3257
Jon.Chapman@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE


## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 18, 2011.

/s/ Jonathan R. Chapman
Jonathan R. Chapman
Assistant U.S. Attorney